Filed 6/17/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ALEKSANDR VASILENKO et al., | C074801 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2011-00097580) |
| v. | |
| GRACE FAMILY CHURCH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Reversed with directions.

Torrano Law, Frank J. Torrano; Jaramillo & Borcyckowski and Robert D. Borcyckowski for Plaintiffs and Appellants.

Mason Thomas and Bradley S. Thomas for Defendant and Respondent.

Plaintiff Aleksandr Vasilenko was hit by a car and injured while crossing Marconi Avenue in Sacramento. At the time, he was crossing a busy five-lane road on his way

1

from an overflow parking lot controlled and staffed by defendant Grace Family Church (GFC or the church) to a function at the church. Vasilenko and his wife Larisa (collectively Vasilenko) sued GFC and others for, among other causes of action, negligence and loss of consortium, alleging that GFC acted negligently in locating its overflow parking lot in a place that required invitees like him to cross a busy street where they might be hit by a car and by failing to protect him from that risk. The trial court granted GFC's motion for summary judgment on the ground that GFC owed no duty to Vasilenko because it did not own, possess, or control the public street where Vasilenko was injured.[1] Vasilenko appeals from the judgment of dismissal entered in GFC's favor following the grant of its motion for summary judgment, contending that the location of his injury is not dispositive, and that GFC failed to satisfy its burden of negating the general duty of ordinary care set forth in Civil Code section 1714.[2] We shall conclude that the location of the overflow lot, which required GFC's invitees who parked there to cross a busy thoroughfare in an area that lacked a marked crosswalk or traffic signal in order to reach the church, exposed those invitees to an unreasonable risk of injury offsite, thus giving rise to a duty on the part of GFC. Accordingly, we shall reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are viewed in the light most favorable to Vasilenko as the losing party on summary judgment. (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 265.)

GFC is located on Marconi Avenue across from the Debbie Meyer Swim School. The section of Marconi Avenue that separates GFC and the swim school consists of five lanes: two eastbound; two westbound; and a central universal left-turn lane. The nearest

---

[1] Vasilenko also sued the driver of the car that hit him and the driver's employer. They are not parties to the present appeal.

[2] Further undesignated statutory references are to the Civil Code.

cross street is Root Avenue, which intersects Marconi Avenue about 50 to 100 feet east of the church and the swim school.  There is no traffic signal or marked crosswalk at the intersection of Marconi and Root Avenues.

GFC had an agreement with the swim school allowing it to use the swim school's parking lot (swim school lot or overflow lot) when the church's main lot, located adjacent to the church, was full.  Church members served as volunteer parking attendants.  Attendants assisted drivers with navigating through the church's main parking lot and identifying alternate places to park when the main lot was full.  Attendants provided some invitees with a printed map showing alternate places to park, including the swim school lot.  Attendants also were stationed at the swim school lot.

On the evening of November 19, 2010, Vasilenko went to GFC to attend a function being held at the church.  When he arrived, the church's main parking lot was full, and the attendant gave him a map and told him that he could park across the street at the swim school lot.  The attendant did not instruct him to cross at the intersection of Marconi and Root Avenues when returning to the church.

Sergey Skachkov and his girlfriend parked in the swim school lot at about the same time as Vasilenko.  Two parking attendants were on duty at the swim school lot when Skachkov arrived; one waved drivers into the lot entrance and the other directed drivers where to park.  Neither attendant provided any instruction or assistance on how to cross Marconi Avenue.

Skachkov and his girlfriend took the most direct route to the church and crossed in the middle of the block.  After looking both ways, they crossed the two eastbound lanes and waited in the universal turn lane.  Once there, Skachkov noticed Vasilenko about 15 feet to his right.  Vasilenko waited with Skachkov and his girlfriend in the center lane for the westbound traffic to clear.  After about a minute, all three attempted to cross the two westbound lanes.  After walking half way across the last two lanes, Skachkov saw the

3

headlights of an upcoming car and he, his girlfriend, and Vasilenko started running. Vasilenko was hit by the car and injured.

Vasilenko sued GFC for negligence (third & fourth causes of action) and loss of consortium (second cause of action).[3]  In his third cause of action for general negligence, Vasilenko alleged that GFC created a foreseeable risk of harm by maintaining an overflow parking lot in a location that required its invitees to cross Marconi Avenue, was negligent in failing to protect against that risk, and as a result, he was hit by a car while crossing the street.  In his fourth cause of action for general negligence, Vasilenko alleged that GFC was negligent in failing to adequately train or supervise its parking lot attendants, and as a result of such inadequate training and supervision, he was hit by a car while crossing the street on his way to the church.

GFC moved for summary judgment on the ground, among others, that it "did not have a duty to assist [Vasilenko] with or provide instruction about how to safely cross a public street" that it did not own, possess, or control.  Vasilenko responded that GFC's lack of ownership or control over the public street was not dispositive where, as here, GFC controlled the overflow parking lot, including its location.  Specifically, Vasilenko asserted that GFC created a dangerous condition by "selecting and establishing a location for the overflow lot with a dangerous avenue of approach to the church."  The trial court granted GFC's motion for summary judgment, finding that GFC "did not owe a duty of care to the plaintiff or other members of the public to assist them in safely crossing a public street, which it did not own or control."  Vasilenko appeals from the judgment of dismissal entered in GFC's favor following the grant of its summary judgment motion.

DISCUSSION

---

[3]  The loss of consortium cause of action is derivative of the negligence claims.  Whether the trial court erred in entering summary judgment as to that cause of action is dependent upon whether the court properly entered summary judgment as to the negligence claims.

4

Vasilenko challenges the trial court's determination that GFC did not owe him a duty of reasonable care.  He asserts that "[t]here is no public policy basis for exempting GFC from the fundamental principle that everyone is responsible for injury caused by his or her negligence," and our "Supreme Court rejects the view that a defendant cannot be liable for injury to a business invitee not physically present on land owned or possessed by defendant."  We agree that the trial court erred in determining that GFC did not owe Vasilenko a duty of care as a matter of law.

The standard of review for an order granting a motion for summary judgment is de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)  We apply the same three-step process as the trial court.  "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought. . . . We then examine the moving party's motion, including the evidence offered in support of the motion."  (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159.)  A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 168-169.)  If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied.  (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle*, at p. 169.)  However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle*, at p. 169.)

A fundamental element of any cause of action for negligence is the existence of a legal duty of care running from the defendant to the plaintiff.  (*Taylor v. Elliott Turbomachinery Co. Inc.* (2009) 171 Cal.App.4th 564, 593.)  The existence and scope of

5

any such duty are legal questions for the court.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

"The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . .'  (Civ. Code, § 1714, subd. (a).)  In other words, 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ." '  [Citation.]"  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771 (*Cabral*).)  In *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 (*Rowland*), our Supreme Court "identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714:  'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.'  [Citations.]"  (*Cabral,* at p. 771, quoting *Rowland*, at p. 113.)

"[T]he *Rowland* factors are evaluated at a relatively broad level of factual generality."  (*Cabral*, *supra*, 51 Cal.4th at p. 772.)  In determining whether those factors support an exception to the general duty of reasonable care, our focus is not on the facts of the particular case before us.  (*Ibid.*)  Instead, we ask "whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy."  (*Ibid.*)  "By making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a categorical no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff no duty of ordinary care, which is for the court to make, and a

6

determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the jury to make." (*Ibid.*, italics omitted.)

As the moving party on a summary judgment motion, GFC had the burden of showing that Vasilenko's negligence causes of action lacked merit because one or more elements of the causes of action could not be established or there was a complete defense to those causes of action. (Code Civ. Proc., § 437c, subd. (p)(2).) GFC's motion for summary judgment was predicated primarily on the assertion that the element of duty was lacking because Vasilenko was injured while walking across a public street that was not owned, controlled, or otherwise occupied by GFC. As we shall explain, that Vasilenko was injured on property that was not owned, possessed, or controlled by GFC is not dispositive of the issue of duty where, as here, property that was owned, possessed, or controlled by GFC was maintained in such a manner as to expose persons to an unreasonable risk of injury offsite.

Those who own, possess, or control property generally have a duty to exercise ordinary care in managing the property in order to avoid exposing others to an unreasonable risk of harm. (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156; § 1714, subd. (a).) "In most instances, where there is no control over the premises, there is no duty to exercise reasonable care to prevent injury. (*Hamilton v. Gage Bowl, Inc. (*1992) 6 Cal.App.4th 1706, 1711.) Generally, 'a landowner has no right to control and manage premises owned by another.' (*Steinmetz v. Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142, 1147.) Thus, usually a landowner has no duty to prevent injury on adjacent property. (See *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 386 [no duty to customer struck by motorist on adjacent public street]; *Hamilton v. Gage Bowl, Inc.*, *supra*, 6 Cal.App.4th at p. 1714 [owner of parking lot not liable to customer injured by sign which fell from adjacent building].) Similarly, an adjacent landowner has no duty to warn of dangers outside of his or her property if the owner did not create the danger. (*Seaber v. Hotel Del Coronado* (1991) 1 Cal.App.4th 481, 487-488 [hotel not

7

liable for failure to warn patron who was killed crossing adjacent street to use parking lot frequented by guests].)" (*Annocki v. Peterson Enterprises*, LLC (2014) 232 Cal.App.4th 32, 37.) However, as the *Annocki* court recognized, there are exceptions to the general principle. (*Id.* at p. 38)

For example, in *Barnes v. Black* (1999) 71 Cal.App.4th 1473 (*Barnes*)*,* a child died after the "big wheel" tricycle he was riding veered off a sidewalk inside the apartment complex where he lived, travelled down a steep driveway and into a busy street where he was struck by an automobile. (*Id.* at p. 1476.) The sidewalk and driveway were within the grounds of the apartment complex; the busy four-lane road where the child was struck was not. (*Ibid.*) The child's family sued the owner of the apartment complex for, among other things, negligence, premises liability, products liability, and negligent infliction of emotional distress. (*Ibid.*) The apartment owner moved for summary adjudication of those causes of action on the ground that the element of duty was lacking because the injury occurred on the public street and not on land owned or controlled by the owner. (*Id.* at pp. 1476-1477.) The trial court granted the motion, and the child's family appealed, arguing that the apartment owner "owe[d] its tenants a duty of reasonable care to avoid exposing children playing on the premises to an unreasonable risk of injury on a busy street off the premises and [the owner] failed to satisfy its burden on summary adjudication to negate the duty of care." (*Id.* at p. 1478.)

The Court of Appeal reversed, holding that the apartment owner failed to satisfy its burden to negate a duty of care. (*Barnes, supra,* 71 Cal.App.4th at p. 1479.) The court explained that "[a] landowner's duty of care to avoid exposing others to a risk of injury is not limited to injuries that occur on premises owned or controlled by the landowner. Rather, the duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite." (*Id.* at p. 1478.) The court determined that the fact the child was injured on a public street over which the

8

apartment owner had no control was "not dispositive under the *Rowland* analysis," and that the apartment owner failed to "offer any evidence to show the injury was not foreseeable, the injury was not actually suffered, or the slope of the driveway and configuration of the sidewalk, play area, and driveway were not closely connected to the injury, or to negate any of the other *Rowland* factors." (*Id.* at p. 1479.)

The same is true here. As in *Barnes*, the salient fact is not that GFC did not control the public street where Vasilenko was injured, but that it *did* control the location and operation of its overflow parking lot, which Vasilenko alleges caused or at least contributed to his injury. (*Barnes, supra,* 71 Cal.App.4th at p. 1479.) Like the configuration of the sidewalk and driveway in *Barnes,* the location of the overflow lot, which GFC concedes it controlled at the time of the accident, required GFC's invitees who parked there to cross a busy thoroughfare in an area that lacked a marked crosswalk or traffic signal in order to reach the church, thereby exposing them to an unreasonable risk of injury offsite. Like the apartment owner in *Barnes*, GFC failed to offer any evidence to show the injury was not foreseeable, the injury was not actually suffered, or the location and management of its overflow parking lot, which GFC concedes it "temporarily controlled," were not closely connected to the injury, or to negate any of the other *Rowland* factors. Indeed, GFC made no attempt to apply the *Rowland* factors based on the mistaken belief that the place of Vasilenko's injury--a public street--was dispositive.

Our Supreme Court recently affirmed that while a dangerous condition "[m]ost obviously" exists when property is "defective in such a way as to foreseeably endanger those using the property itself," property has also been considered dangerous because of its location. (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148-149.) The question presented in that case was "whether the location of a bus stop may constitute a 'dangerous condition' of public property, within the meaning of Government Code sections 830 and 835, where, in order to reach the stop, bus patrons

9

must cross a busy thoroughfare at an uncontrolled intersection." (*Id.* at p. 144, fn. omitted.) The plaintiff was hit by a car while attempting to cross a busy thoroughfare on her way to a bus stop. (*Id.* at p. 145.) The plaintiff sued the transit authority, among others. (*Id.* at p. 146.) The jury returned its verdict in the plaintiff's favor, expressly finding that the bus stop was a dangerous condition of public property, and the Court of Appeal affirmed. (*Ibid.*) In affirming the judgment of the Court of Appeal, our Supreme Court rejected the transit authority's contention that it could not "be liable for an injury occurring on property (the street) it neither owned nor controlled," reasoning that the transit authority "owned and controlled its own bus stop, and a condition of *that* property, its physical situation, caused users of the bus stop to be at risk from the immediately adjacent property . . . ." (*Id.* at p. 151.) The court found that the location of the plaintiff's injury, on adjacent county property, was not dispositive, explaining, "In the circumstances, that [the plaintiff] was injured trying to access [the transit authority's] property makes her no less a user of it. If a [transit authority] bus stop could be reached only by jumping across an adjacent ditch, [the transit authority] would logically bear the same liability to a patron who fell into the ditch attempting to reach the stop as to one who fell while waiting at the stop." (*Ibid.*) Although *Bonanno* involved a public entity and thus was governed by Government Code sections 830 and 835, not Civil Code section 1714, our Supreme Court has determined that "[t]he definition of dangerous condition found in section 830, combined with the traditional requirement—codified in section 835, subdivision (a)—that the public entity's creation of the dangerous condition must have been unreasonable, reflects an ordinary-negligence standard." (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1136.)

In its respondent's brief, GFC contends that California courts have consistently declined to impose a duty on private landowners for injuries caused by third parties on premises not owned, controlled, or possessed by the landowner, citing this court's decision in *Steinmetz v. Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d

10

1142 (*Steinmetz*). At issue in that case was "a landowner's liability for a criminal assault by a third person upon an invitee which occurs off the landowner's premises." (*Id.* at p. 1144.) There, the plaintiff's decedent attended a social mixer sponsored by the Stockton City Chamber of Commerce (Chamber) and held on premises leased by the California Human Development Corporation (CHDC). (*Ibid.*) There were only 25 to 30 parking spaces on the premises, but there was additional parking off the premises. (*Ibid.*) The decedent left the mixer around 7:30 p.m. and headed to her car, which was parked about one block away, off CHDC's premises. (*Ibid.*) When she reached her car, she was fatally stabbed by an unknown assailant. (*Ibid.*) The plaintiffs sued the Chamber and CHDC alleging that they "breached a duty owing to the decedent as a business invitee in failing to provide a safe place for her to park her car while she attended the mixer." (*Ibid.*) The complaint further alleged that a lack of security and supervisory personnel contributed to the decedent's death. (*Ibid.*) The Chamber and CHDC moved for summary judgment on the ground they "had no liability or responsibility for an attack occurring off [CHDC's] leased premises." (*Id.* at p. 1145.) The trial court granted the motion, and this court affirmed. (*Id.* at p. 1145.) In doing so, we explained, "The duty to take affirmative action for the protection of individuals coming upon the land 'is grounded in the possession of the premises and the attendant right to control and manage the premises.' [Citation.] Generally, however, a landowner has no right to control and manage premises owned by another. CHDC had no right to station security guards on premises it neither owned nor controlled. Nor did CHDC have any right to place lighting in any parking area other than its own parking area. Moreover, neither CHDC nor Chamber had any right to control the activities of either their invitees or third parties where those activities occur off premises which they neither own, possess, nor control." (*Id.* at pp. 1146-1147.) Accordingly, we held under the facts presented that "there is simply no basis for finding that [defendant] owed any duty of care to decedent while

11

decedent was on premises neither owned, possessed, nor controlled by [the] defendant." (*Id.* at p. 1147.)

*Steinmetz* is distinguishable. Contrary to GFC's assertion, Vasilenko does not argue that "where the parking provided on the landowner's premises was inadequate . . . , the landowner should have foreseen that invitees would be forced to park in outlying areas and thus had a responsibility to insure safe egress and ingress." Rather, Vasilenko's claim is that while GFC may not have had a duty to provide additional parking for its invitees, its maintenance and operation of an overflow parking lot in a location that it knew or should have known would induce and/or require its invitees to cross Marconi Avenue created a foreseeable risk of harm to such persons.

In *Seaber v. Hotel Del Coronado, supra*, 1 Cal.App.4th 481 (*Seaber*), cited by both GFC and the trial court, the Fourth District Court of Appeal affirmed an order granting summary judgment in favor of the defendant hotel in a wrongful death action. (*Id.* at p. 484.) A hotel guest was killed when he was struck in a marked crosswalk on a street adjacent to the hotel's property. (*Id.* at p. 484.) The guest had parked in a private lot owned by a third party across the street from the hotel and was leaving the hotel when he was hit. (*Id.* at pp. 484-485.) In sustaining a grant of summary judgment in favor of the hotel, the court noted, " 'The courts . . . have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management, and control.' " (*Id.* at p. 489.) Furthermore, a landowner cannot be responsible for controlling or regulating pedestrian traffic across public streets. A landowner has no duty to warn of dangers beyond its own property when the owner did not create those dangers. (*Id.* at p. 492.)

*Seaber* stands for the proposition that an adjacent landowner has no duty to warn of alleged dangers outside of his or her property if the owner did not create the danger. (*Seaber, supra*, 1 Cal.App.4th at pp. 487-488.) Here, unlike *Seaber,* GFC created the danger by maintaining the overflow lot in a location that required invitees to cross a busy

12

thoroughfare that it knew lacked a crosswalk or traffic signal in order to reach the church. In distinguishing *Warrington v. Bird* (1985) 204 N.J.Super. 611, where the appellate court recognized that liability may rest upon a restaurant for injuries suffered by patrons who were struck by a motor vehicle while crossing a county road which passed between the restaurant and its parking lot, the *Seaber* court noted that the hotel "neither owned the . . . parking lot nor provided it as a parking facility for its patrons." (*Id.* at p. 493, fn. 9.) Here, it is undisputed that GFC controlled the overflow lot at all relevant times herein and provided that lot as a parking facility for its invitees. As detailed above, by maintaining its overflow lot across the street from the church, GFC exposed its invitees who utilized that lot to an unreasonable risk of harm, and thus, owed them a duty to take steps to protect against that risk.

Contrary to GFC's assertion, the circumstances of this case are not analogous to "the case of a downtown restaurant owner whose building does not offer any parking or a downtown law firm with limited offsite parking, prompting the owners to provide instructions about where visitors are able to park." This is not simply a case where a business merely provided instructions about where to park; rather, this is a case where an entity maintained and operated a parking lot in a location that required its invitees to cross a busy thoroughfare *and* directed its invitees to that lot when its main lot was full.

For all the foregoing reasons, we find that GFC failed to establish that the general duty of ordinary care set forth in section 1714 does not apply.

Finally, GFC moved for summary judgment on the alternative grounds that Vasilenko could not establish that (1) GFC's "failure to act was a legal cause of his injuries," or (2) GFC "failed to reasonably train and educate the lot attendants." The trial court did not rely on those grounds in granting GFC's motion, and GFC does not urge us to affirm the judgment on such grounds. Mindful that we may affirm the grant of summary judgment on any ground properly raised below, whether or not addressed by the trial court (*Wilson v. Farmers Ins. Exchange* (2002) 102 Cal.App.4th 1171, 1174, fn. 2;

13

see also Code Civ. Proc., § 437c, subd. (m)(2)), we pause to address them here. GFC claimed that Vasilenko could not establish that GFC's failure to act was a legal cause of his injuries, noting that Vasilenko's "decision about when and where to cross Marconi was his decision and his alone," and "[t]here is no evidence that this same accident would not have occurred in the same manner had plaintiff been instructed to cross at another location, especially since Marconi Avenue is a flat and straight road." As relevant here, an " 'actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.' " (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1239, quoting Rest.2d Torts, § 432.) GFC's claim ignores the fact that it was GFC's decision to operate an overflow lot at the swim school that required Vasilenko to cross the street in the first place. A reasonable juror could infer that Vasilenko would not have been struck by a car crossing Marconi Avenue had GFC not maintained and operated a parking lot across the street from the church. GFC's claim that Vasilenko could not establish the element of causation fails, and summary judgment is not properly sustained on that basis.

GFC also claimed that Vasilenko could not establish that GFC failed to reasonably train and educate its parking lot attendants because the undisputed facts establish that they were adequately trained. Among other things, GFC argued that it was undisputed that two parking attendants were assigned to the swim school lot and were instructed to tell drivers parking in that lot to cross Marconi Avenue at its intersection with Root Avenue. There was evidence, however, that the parking attendants received no written or formal training regarding how to perform their duties, and neither attendant at the overflow lot on the night in question gave any instruction or assistance to Skachkov or Vasilenko with respect to crossing Marconi Avenue. Moreover, there was evidence that crossing at the intersection of Marconi and Root Avenues was dangerous. Thus, even assuming attendants were instructed to tell drivers parking in the overflow lot to cross at the intersection of Marconi and Root Avenues, there is a triable issue as to whether such

14

an instruction was adequate under the circumstances.  Accordingly, summary judgment is not properly sustained on this basis.

Having concluded that summary judgment was not properly sustained on any of the grounds urged by GFC, we shall reverse the judgment of dismissal entered in its favor.

## DISPOSITION

The judgment of dismissal entered in favor of GFC is reversed, and the matter is remanded to the trial court with directions to vacate its order granting summary judgment in favor of GFC.  Vasilenko shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      BLEASE      , J.


I concur:


      BUTZ      , J.

15

RAYE, J., dissenting.

Respectfully, I dissent.

Aleksandr Vasilenko was hit by a car while attempting to cross five lanes of traffic on Marconi Avenue as he made his way to a function at defendant Grace Family Church (GFC or the church). He was leaving the Debbie Meyer Swim School parking lot, which had been made available to the church as an overflow parking lot when the church lot became full. Though he could have crossed at the nearest intersection, he chose instead to cross in the middle of the block.

Vasilenko's injuries were serious. It is tragic that he received them while on a spiritual mission.

There is no doubt that, as with any mishap caused by human activity, this tragedy could have been averted. Busy boulevards are dangerous places for pedestrians to be, particularly when crossing in the middle of a block. Any number of precautions to mitigate the risk of injury can be imagined. However, the rules of tort liability do not focus on what a plaintiff has suffered, considered in isolation, but on the relationship between what the plaintiff has suffered and what the defendant has done or failed to do. (See generally Ripstein, *The Division of Responsibility and the Law of Tort* (2004) 72 Fordham L.Rev. 1811.) The dispositive issue is one of duty. There is no duty to eliminate all possible risk in every human endeavor. Citing various authorities, the majority concludes that the location of the overflow lot, which required users of the parking lot to cross Marconi Avenue without benefit of a crosswalk or traffic signal, gave "rise to a duty on the part of GFC," the precise contours of which are not disclosed. The cited authorities are inapposite and the conclusion incorrect.

The majority recognizes that "[t]hose who own, possess, or control property generally have a duty to exercise ordinary care in managing the property in order to avoid exposing others to an unreasonable risk of harm[, but i]n most instances, where there is no control over the premises, there is no duty to exercise reasonable care to prevent

1

injury. . . .  Generally, 'a landowner has no right to control and manage premises owned by another.' . . . Thus, usually a landowner has no duty to prevent injury on adjacent property[, and s]imilarly, an adjacent landowner has no duty to warn of dangers outside of his or her property if the owner did not create the danger." (*Annocki v. Peterson Enterprises, LLC* (2014) 232 Cal.App.4th 32, 37, citations omitted.)

But there are exceptions to these general principles and the majority opinion offers *Barnes v. Black* (1999) 71 Cal.App.4th 1473 (*Barnes*) and *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139 (*Bonanno*) as prime examples, discussing them at length while dismissing *Steinmetz v. Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142 (*Steinmetz*) and *Seaber v. Hotel Del Coronado* (1991) 1 Cal.App.4th 481 (*Seaber*) as contrary distinguishable authority.

I am not persuaded that our case is analogous to *Barnes* or *Bonanno*.  As for *Seaber* and *Steinmetz*, I agree they can be distinguished from this present case factually, but *Seaber* articulates principles of law that are controlling in the present case.

In *Barnes*, the sidewalk in an apartment complex, which provided passage to a children's play area, adjoined a driveway that sloped steeply downward to a busy street. The plaintiffs' decedent was riding his "big wheel" tricycle along the sidewalk when the child lost control and rolled down the steep driveway into busy traffic; he was struck by a car and killed.  As here, the defendant argued that he had no duty to protect his tenants from "unreasonable risk of injury off the premises on a public street over which [he] ha[d] no control." (*Barnes*, *supra*, 71 Cal.App.4th at p. 1478.)  The Court of Appeal properly rejected this argument, concluding that "the duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite." (*Ibid*.)  It was not the mere location of the property adjacent to a busy street that gave rise to the duty recognized in *Barnes*.  It was how the property was maintained:  the construction of a sidewalk used by children to access a play area, adjacent to a driveway

2

that sloped down to a busy street. In our case, the defendant performed no maintenance and made no improvements or alterations to the property that increased the risk beyond the risk posed by its location next to a busy street.

At first glance, *Bonanno*, *supra*, 30 Cal.4th 139 seems like a more compelling case. But the factual distinctions are clear. *Bonanno* truly involved a dangerous condition of public property. The court framed the issue in *Bonanno* thusly: "Under [Government Code] section 835, a public entity such as [the Central Contra Costa Transit Authority] is 'liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [that]: [¶] . . . [¶] (b) [t]he public entity had actual or constructive notice of the dangerous condition under [Government Code] Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' At this stage of the proceedings, the only element at issue is the existence of a dangerous condition of the property." (*Bonanno*, *supra*, 30 Cal.4th at p. 146.)

In *Bonanno*, the defendant erected a bus stop that could only be reached by crossing a dangerous crosswalk. As the court noted, "Our order limiting review . . . assumes the existence of a dangerous crosswalk, posing only the question whether a *bus stop* may be deemed dangerous because bus users, to reach the stop, must cross at that dangerous crosswalk." (*Bonanno*, *supra*, 30 Cal.4th at p. 147.) Here, defendant erected nothing and there is nothing to suggest the parking lot was dangerous. Defendant simply made its parishioners aware of nearby parking and provided attendants to facilitate the positioning of their cars within the facility.[1] The danger asserted by plaintiffs was not in

---

[1] It is not clear under plaintiffs' theory whether liability would attach had the swim club simply posted signs or distributed flyers declaring "church parking welcome."

3

entering the property but in leaving it to cross Marconi Avenue, a dangerous street if not crossed with care.

As the majority notes, the court in *Seaber* applied this general rule: " 'The courts . . . have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management and control.' " (*Seaber*, *supra*, 1 Cal.App.4th at p. 489.) Furthermore, a landowner cannot be responsible for controlling or regulating pedestrian traffic across public streets. A landowner has no duty to warn of dangers beyond its own property when the owner did not create those dangers. The majority distinguishes *Seaber* thusly: "Here, unlike *Seaber*, GFC created the danger by maintaining the overflow lot in a location that required invitees to cross a busy thoroughfare that it knew lacked a crosswalk or traffic signal in order to reach the church."

Truly, this is a distinction without a difference.

In *Seaber*, the entrance to the defendant hotel was located adjacent to a busy intersection. The hotel recognized the danger and implored the California Department of Transportation (Caltrans) to install a traffic control device, but Caltrans chose instead to provide a painted crosswalk. However, the issue in *Seaber* was not whether the hotel acted reasonably, but whether the hotel had a duty at all given that the allegedly dangerous crosswalk, though adjacent to the hotel, was owned by the State of California, and in light of the rule that the hotel owed no duty "to persons injured in adjacent streets . . . ." (*Seaber*, *supra*, 1 Cal.App.4th at p. 489.) The plaintiffs sought to bring their case within the "special benefit" exception to the general rule by showing the dangerous crosswalk was constructed abutting the hotel at the hotel's request and for its benefit (*id.* at p. 490), but the court rejected the attempt.

So it is not enough to say that the church created the danger by using a lot next to a busy street over which people needed to cross, any more than the hotel created the danger by establishing its entrance next to a dangerous crosswalk. While *Seaber* is

4

distinguishable—the "special benefit" exception is not involved in our case—the case is nonetheless noteworthy for its reaffirmation of the general rule that landowners owe no duty to prevent injury on adjacent property and for its explanation of the exceptions to the rule, where the management of property has increased the risk presented by the property's location. As expressed by the court, "[a]lthough the scope of premises liability has greatly expanded over the past decade and a half, liability has been restricted within the context of landowners whose property abuts public sidewalks and streets. For, it cannot be ignored that premises liability is predicated upon the concept that possession includes the attendant right to manage and control, justifying liability when one has failed to exercise due care in property management." (*Seaber*, *supra*, 1 Cal.App.4th at p. 489.) It was the property owner's management of the properties involved in the *Bonanno* and *Barnes* cases that led to imposition of a duty and consequent liability.

Here, the church was not a property manager. The swim school merely gave permission to the church's members to park there. Unlike the poorly designed sidewalk in the *Barnes* case, no features of the swim school parking lot had been altered by the church. The church did nothing to increase the risk posed by adjacent property over which neither it nor the swim club exercised control.

Finally, it is worth noting that parking lots servicing a multiplicity of businesses are frequently located next to busy streets. More will be built in the future as metropolitan areas become increasingly congested. The safety of streets and crosswalks has never been the responsibility of parking lot operators or businesses that rely on such parking lots; it is the responsibility of those who maintain the streets and those who choose to cross them. There is no compelling reason to refashion the rules of premises liability or principles of negligence to impose a duty on parking lot operators or owners of land adjacent to busy thoroughfares to guarantee the safety of pedestrians who cross such roadways.

5

I would affirm.

                                                  _____RAYE_____, P. J.