Filed 9/1/16  Bilyeu v. State Farm General Ins. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| DOUGLAS BILYEU et al., | B262117 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC492435) |
| v. | |
| STATE FARM GENERAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ernest M. Hiroshige, Judge.  Affirmed.

Doumanian & Associates, Nancy P. Doumanian, for Plaintiffs and Appellants.

LHB Pacific Law Partners, Clarke B. Holland, Brendan J. Fogarty and Jenny J. Chu, for Defendant and Respondent.

* * * * * *

A homeowner struck his neighbor in the face, knocking him to the ground, breaking one of his ribs and causing a traumatic brain injury that resulted in permanent brain damage. The homeowner claimed he was acting in self-defense, but two juries—one criminal and one civil—rejected this defense. The homeowner's insurer agreed to defend him in the civil suit brought by the neighbor, but ultimately refused to indemnify him for the $6.3 million verdict. The homeowner assigned his rights against the insurer to the injured neighbor, who then sued the insurer for breach of the duty to indemnify, for bad faith denial of coverage, and for relief as a judgment creditor. The trial court granted summary judgment for the insurer. This was correct, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

We have had to reconstruct what happened in this case with no help from appellants' counsel, who supports 12 pages of facts in her opening brief with a single, bulk citation to over 1,100 pages of record. This is a gross violation of the California Rules of Court, which require specific citations to the record rather than a single, useless cite that effectively says, "See Record." (See Cal. Rules of Court, rule 8.204(a)(1)(C).) What is more, this is not counsel's first such transgression.[1] Although we are empowered to strike appellants' entire brief on this basis (Cal. Rules of Court, rule 8.276(a)(4); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1237, 1240), we will not penalize appellants for the intransigence of their attorney and will proceed to hear the merits of the appeal.

---

[1] By our count, it is her ninth within the Second Appellate District alone. (See *Baez v. Burbank Unified Sch. Dist.* (Jan. 25, 2016, B254852) [nonpub. opn.]; *Baez v. Burbank Unified Sch. Dist.* (May 7, 2012, B219581) [nonpub. opn.]; *Bilyeu v. Cowgill* (July 20, 2011, B213939) [nonpub. opn.]; *Baez v. Superior Court* (Dec. 22, 2008, B208294) [nonpub. opn.]; *Mnaskanian v. 21st Century Ins.* (Dec. 21, 2007, B191052) [nonpub. opn.]; *Kostic v. Trammell Crow Co.* (Apr. 17, 2003, B155208) [nonpub. opn.]; *Simpkins v. New Century Volkswagen* (Nov. 25, 2002, B151536) [nonpub. opn.]; *Harding v. Butts* (Dec. 17, 2002, B145104) [nonpub. opn.].)

## I. Facts

### A. *Incident*

In 2006, William Cowgill (Cowgill) lived next door to plaintiff Douglas Bilyeu (Bilyeu), and their homes shared a driveway. One evening, Bilyeu chased Cowgill's dog with a wheeled trash can, threatened to kill the dog, and "charged" at Cowgill and his infant daughter with the trash can while swinging a wine bottle. It is undisputed that, as Bilyeu approached, Cowgill struck or punched Bilyeu in the face. Bilyeu suffered broken ribs and a traumatic brain injury that continues to impact his speech, language and memory.

### B. *Cowgill's insurance coverage*

At the time of the incident, Cowgill had a homeowner's insurance policy with defendant State Farm General Insurance Company (State Farm). The policy provided for third-party liability coverage (that is, claims for injuries to third parties) of $100,000 and third-party medical payments of $1,000. Two provisions of the policy are pertinent here. Coverage L obligated State Farm to provide a legal defense to Cowgill and to indemnify him "up to [the] limit of liability for the damages for which the insured is legally liable" "[i]f a . . . suit is brought against an insured for damages because of bodily injury or property damage . . . caused by an *occurrence*." (Italics added). The policy defined an "occurrence" as "an *accident*, including exposure to conditions, which results in . . . bodily injury." (Italics added.) Coverage M obligated State Farm to pay "the necessary medical expenses incurred or medically ascertained within three years from the date of an *accident* causing bodily injury," but the policy separately noted that any such payment was "not an admission of liability." (Italics added). The policy went on to exclude from Coverage L and Coverage M any "bodily injury . . . which is either expected or intended by the insured; or . . . which is the result of willful and malicious acts of the insured."

Within days of the incident, Cowgill notified State Farm of the incident, reporting that Bilyeu was the aggressor and that Cowgill had "struck [him] in the face, knocking

3

him to the ground, in defense of myself and my infant child." State Farm responded with a letter in which it "specifically reserve[d] its right to deny defense or indemnity" because there "may be a question whether [State Farm] is obligated to defend or indemnify" given the policy's limitation of coverage to "occurrence[s]" that are "accident[al]" and the policy's exclusion of "willful and malicious" conduct.

### C. *Cowgill's criminal conviction arising out of the incident*

Based on the incident, local prosecutors charged Cowgill with the crimes of battery with serious bodily injury (in violation of Penal Code section 243, subdivision (d)) and with assault by means likely to cause great bodily injury (in violation of Penal Code section 245, subdivision (a)(1).) Consistent with his initial statement to police that he struck Bilyeu in self-defense and/or in defense of his daughter, the judge instructed the jury that they could convict Cowgill only if they found that he acted "willfully and unlawfully," which required the jury to find that Cowgill had acted "willingly or on purpose" and "not . . . in self-defense or in defense of someone else." The jury convicted Cowgill on both counts, rejecting his claims of self-defense and defense of another.

His convictions were affirmed on appeal.[2] As relevant here, the Court of Appeal specifically concluded that "[t]here was substantial evidence from which the jury could reasonably infer that Cowgill's claim of [self-defense and defense of another] was false. The evidence showed extensive injuries to Bilyeu: a broken nose, a black left eye, a skull fracture on the left side of his head, abrasions on the right side of his forehead, abrasions to his neck, and broken ribs on his right side. A jury would have to suspend disbelief to conclude these injuries were caused by a single blow . . . and ensuing fall." (*People v. Cowgill* (May 21, 2009, B203341) [nonpub. opn.].)

### D. *Civil lawsuit against Cowgill*

---

[2] The appellate court overturned the jury's finding that Cowgill caused Bilyeu to be put in a coma, which was a sentencing enhancement under Penal Code section 12022.7, subdivision (b).

4

Bilyeu asked State Farm to pay him the policy limits under Cowgill's policy. State Farm issued Bilyeu a check for $1,000 for medical expenses with the proviso that "[p]ayments made under the medical payments coverage [of Coverage M] are not an admission of liability." State Farm declined to pay Bilyeu the $100,000 policy limit under Coverage L, explaining to Cowgill that it was still investigating whether the claim was covered by Cowgill's policy.

Bilyeu and his wife (collectively, the Bilyeus) then sued Cowgill for damages on theories of negligence and negligent infliction of emotional distress. State Farm agreed to defend Cowgill against the Bilyeus' lawsuit, but reaffirmed that it was still reserving its right not to indemnify Cowgill for any damages verdict. Because State Farm was reserving its right not to indemnify him, it offered to fund Cowgill's retention of independent counsel as required by *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, but Cowgill waived his right to so-called "*Cumis* counsel" in writing. Before trial began, State Farm sent Cowgill a letter that for the third time expressly reserved its right not to indemnify him.

The matter proceeded to a jury trial. The judge instructed the jury on self-defense and defense of another. The jury rejected those defenses, found Cowgill liable under both theories, and awarded $14,191,527 in damages to Bilyeu and $3,000,000 in damages to his wife. The Bilyeus consented to a reduced damages award of $6,303,597.32 to Bilyeu and $1.25 million to his wife in lieu of a new trial, and this Court affirmed the verdict and reduced damages award.

### E.     *State Farm denies indemnity*

After Cowgill's criminal conviction was upheld on appeal and became final, State Farm determined that Cowgill was not entitled to indemnity under his policy. Relying on Cowgill's admission that he "struck" Bilyeu and the two juries' rejection of Cowgill's claim of self-defense and defense of another, State Farm explained that the Bilyeus' claim was not covered by the policy because it was not an "accident[al]" "occurrence" and because it was an excluded, "intentional" act.

## II.     **Procedural History**

Cowgill assigned his claim against State Farm to the Bilyeus.

In the operative second amended complaint, the Bilyeus sued State Farm on behalf of Cowgill for (1) breach of its contractual promise to indemnify, and (2) breach of the implied covenant of good faith and fair dealing, including claims for bad faith refusal to accept a reasonable settlement within policy limits, bad faith failure to properly investigate, and bad faith breach of the duty to inform. In the same complaint, the Bilyeus also sued State Farm directly as a judgment creditor.[3]

The Bilyeus and State Farm filed competing motions for summary judgment or summary adjudication. The trial court granted State Farm's motion and denied the Bilyeus'.

After the trial court entered judgment for State Farm and denied the Bilyeus' postjudgment motion for a new trial, the Bilyeus filed this timely appeal.

## DISCUSSION

A trial court may grant summary judgment or summary adjudication upon a showing "that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Albert v. Mid-Century Ins. Co.* (2015) 236 Cal.App.4th 1281, 1289 (*Albert*).) The moving party bears the initial burden of showing that the opposing party cannot establish "[o]ne or more of the elements of [its] cause of action" or by showing a valid affirmative defense. (Code Civ. Proc., § 437c, subds. (o) & (p)(2).) If that burden is met, the "burden shifts" to the opposing party "to show that a triable issue of one or more material facts exists as to that cause of action or [an affirmative] defense." (*Id.*, subd. (p)(2).) "'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1057, quoting *Aguilar v. Atlantic Richfield Co.* (2001)

---

**3** The Bilyeus also brought a derivative claim for legal malpractice, but subsequently dismissed that claim.

6

25 Cal.4th 826, 850.)  We review a trial court's grant of summary judgment de novo, and "[o]ur review of the interpretation of an insurance contract on undisputed facts is also de novo."  (*Albert*, at p. 1289.)

## I.      Breach of Contract

To prevail on a claim for breach of contract, a plaintiff must prove "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)  Because State Farm provided Cowgill a defense to the Bilyeus' lawsuit, we are concerned only with whether State Farm breached its duty to *indemnify* Cowgill, not whether it breached its duty to *defend* him.  (See *McMillin Companies, LLC v. American Safety Indemnity Company* (2015) 233 Cal.App.4th 518, 534-535 [damages for breach of duty to defend is the cost of the defense incurred in litigation].)  This is significant because the duty to defend turns on whether a claim *may potentially* be covered by the terms of an insurance policy, while the duty to indemnify turns on whether the claim *is actually* covered those terms.  (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287 (*Hartford*).)  In examining the terms of an insurance policy, we start with the policy's plain language and give effect to the "'clear and explicit' meaning of [the contract's] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'"  (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647-648, quoting Civ. Code, § 1644; see generally *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 (*Waller*); Civ. Code, §§ 1638 & 1639.)  We independently interpret a contract's meaning.  (*MacKinnnon*, at p. 647.)

In this case, Cowgill's conduct is not covered by the plain terms of his policy. Coverage L of the policy reaches "bodily injury . . . caused by an *occurrence*," and the policy defines "occurrence" as an "*accident* . . . which results in . . . bodily injury." Although the policy does not define the term "accident," California law supplies a default definition that is read into every liability policy lacking its own, unique definition. (*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009)

7

47 Cal.4th 302, 308 (*Delgado*) [the "'common law construction of the term "accident" becomes part of the policy'"].) California law provides that "[i]n the context of liability insurance, an accident is ""'an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.'""" [Citations.]" (*Ibid.*) "'An intentional act is not an "accident."""" (*Albert*, *supra*, 236 Cal.App.4th at pp. 1290-1291; *Delgado*, at pp. 311-312 ["an injury-producing event is not an 'accident' . . . when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor"]; *Fire Ins. Exchange v. Superior Court* (2010) 181 Cal.App.4th 388, 392 ["'Accident' is given a commonsense interpretation that it is an unintentional, unexpected, chance occurrence"].)

Cowgill's conduct was not an "accident." Cowgill frankly admitted that he did precisely what he intended to do: He struck Bilyeu in the face. This act was intentional. Although Cowgill asserted that he undertook this intentional act in self-defense or in defense of his daughter, two juries—the criminal jury that heard the assault charges against him and the civil jury that awarded the Bilyeus $6.3 million—specifically and necessarily found that Cowgill did *not* reasonably act in self-defense. These jury findings are binding. (*State Farm Fire & Casualty Co. v. Dominguez* (1982) 131 Cal.App.3d 1, 6 (*Dominguez*) [criminal jury's rejection of self-defense is binding in later insurance coverage dispute, and precludes coverage].) And although neither jury made a finding as to whether Cowgill acted in self-defense *unreasonably*, our Supreme Court in *Delgado* held that "an insured's unreasonable belief in the need for self-defense does not turn the resulting purposeful and intentional act of assault and battery into 'an accident' within [a] policy's coverage clause." (*Delgado*, *supra*, 47 Cal.4th at p. 317.)

The Bilyeus level six attacks at this analysis. First, they argue that an insured's acts in self-defense—whether they be reasonable or unreasonable—are deemed not to be "intentional." For support, they cite *Mullen v. Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163. To be sure, *Mullen* held that "injuries resulting from acts committed by an insured in self-defense"—"even if [the insured] exceeded the reasonable bounds of self-defense"—"are not 'intended' or 'expected' within the meaning of those terms as

8

customarily used in an exclusionary clause." (*Id.* at pp. 170-171; see also *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 277 [same].)  But *Mullen* and *Gray*—the decision on which *Mullen* relies—were interpreting an *exclusion* to an insurance policy, not the policy's *coverage* in the first place.  This is a critical distinction because an insurance policy's exclusionary clauses, unlike its coverage clauses, must be "strictly construed" against the insurer.  (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 471.)  Indeed, in holding that an insured's unreasonable acts of self-defense did not qualify as an "accident" (and thus an "occurrence") under a policy's *coverage* clause, our Supreme Court in *Delgado* specifically distinguished *Gray* and its progeny on this very basis:  "*Gray* and the cases that have cited it pertained to the question of unreasonable use of force or unreasonable self-defense in the context of an insurance policy's *exclusionary* clauses, not as here in the context of a policy's *coverage* clause." (*Delgado*, *supra*, 47 Cal.4th at p. 313, original italics.)  Because we conclude that Cowgill's acts do not fall within the terms of his policy's Coverage L provision, we have no need to consider whether those acts also fit within the policy's exclusions from Coverage L.  (*Vasilenko v. Grace Family Church* (2016) 248 Cal.App.4th 146, 158 ["we may affirm the grant of summary judgment on any ground properly raised below"].)  Accordingly, the authority the Bilyeus urge upon us is irrelevant.

Second, the Bilyeus argue that the prior juries' rejection of Cowgill's claim of reasonable self-defense are not binding in this dispute because those prior juries rejected self-defense in the context of trials involving battery (in the criminal trial) and negligence (in the civil trial), not in the context of a contract-based insurance action.  Collateral estoppel only applies where, among other things, the "same issue" was actually litigated and necessarily decided in a prior proceeding between the same parties or persons in privity with them.  (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943; *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)  However, there is no question that the same issue of self-defense *was* litigated in the two prior matters.  (Cf. *Allstate Ins. Co. v. Overton* (1984) 160 Cal.App.3d 843, 847-848 [conviction of misdemeanor battery, which required a finding of "the least touching," is

not a determination of bodily injury or of intentional contact].)  The *context* in which the issue was decided does not matter.  (Accord, *Dominguez*, *supra*, 131 Cal.App.3d at pp. 5-6 [jury's rejection of self-defense in a homicide case is binding in a subsequent insurance dispute].)  The Bilyeus do not get a third bite at that apple.

Third, the Bilyeus contend that our analysis leads to a result at odds with *Gonzalez v. Fire Ins. Exchange* (2015) 234 Cal.App.4th 1220 and *Barks v. CastlePoint Nat'l Ins. Co.* (C.D.Cal. Mar. 26, 2014, No. SACV 13-00954 DOC(EX)) 2014 U.S.Dist. LEXIS 43447.  *Gonzalez* held that an insurance company had a duty to defend under an insurance policy that covered intentional acts.  (*Gonzalez*, at p. 1236.)  *Barks* held that an insurance company had a duty to defend under an insurance policy covering only "accident[al]" "occurrence[s]," but where it was unclear whether the insured's act in building a house in violation of a height restriction was intentional or accidental.  (*Barks*, at pp. 16-17.)  This case involves whether an insurance company has a duty to *indemnify* under a policy that covered only "accidents" and after two juries found the insured's acts to be intentional and not in self-defense.  *Gonzalez* and *Barks* are inapt.

Fourth, the Bilyeus assert that Cowgill may have intended to strike Bilyeu in the face but never intended to injure him as greatly as he did.  This argument is without merit.  "When an insured intends the acts resulting in the injury or damage, it is not an accident 'merely because the insured did not intend to cause injury.  The insured's subjective intent is irrelevant.'"  (*Albert*, *supra*, 236 Cal.App.4th at p. 1291; see also *State Farm General Ins. Co. v. Frake* (2011) 197 Cal.App.4th 568, 579-580 ["the term 'accident' refers to the insured's conduct, rather than the unintended consequences of that conduct"].)

Fifth, the Bilyeus contend that State Farm should be estopped from refusing to indemnify Cowgill because (1) State Farm provided a defense to Cowgill in the Bilyeus' civil lawsuit, and (2) they gave Bilyeu a $1,000 check under Coverage M.  The Bilyeus' first argument misunderstands the difference between an insurer's duty to *defend* and its duty to *indemnify*.  As alluded to above, the former attaches whenever there is "potential" for liability at the outset of litigation, while the latter attaches only if there is actual

10

liability under the terms of the policy at the conclusion of litigation. (*Hartford*, *supra*, 59 Cal.4th at p. 287.) Because of these differences, "'[a]n insurer may have a duty to defend even when it ultimately has no obligation to indemnify.'" (*Ibid.*) Thus, an insurer's decision to fulfill its duty to defend does not automatically estop it from disputing its duty to indemnify. As long as the insurance company expressly reserves its right to contest its duty to indemnify later and provides its insured with the opportunity to obtain *Cumis* counsel, there is no estoppel. (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1019; *Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1108 ["Our state's law has long recognized that a liability insurer can, by appropriate action, provide its insured a defense without waiving its claim of noncoverage of the policy"].) Here, State Farm expressly reserved its rights in writing on at least three occasions and offered Cowgill *Cumis* counsel, an offer he rejected. The Bilyeus contend that State Farm's reservation of rights was not sufficiently "direct and forthright," but State Farm's repeated statements that it was "specifically reserving its right to deny defense or indemnity" coupled with its explanation of why it felt the policy might not apply are plainly understandable. Along the same lines, State Farm's payment of $1,000 to Bilyeu does not estop State Farm because it expressly stated in both Cowgill's policy itself and in the letter to Bilyeu accompanying the check that its payment under Coverage M was "not an admission of liability." (See *Malinski v. Wegman's Nursery & Landscaping, Inc.* (1980) 102 Cal.App.3d 282, 291 ["a carrier making an advance payment under a medical payment provision, applicable 'irrespective of legal liability of the insured' (Ins. Code, § 108, subd. (b)(1)), obviously does not thereby in any sense *acknowledge* 'legal liability of the insured'"].)

Lastly, the Bilyeus contend that Cowgill's policy does not define the term "accident," does not specify that a criminal conviction may constitute proof of a willful act or proof that self-defense does not apply, does not define "self-defense" or "defense

of others," and argues that these ambiguities must be construed against State Farm.[4] As noted above, however, California law supplies a definition of "accident" that is read into any policy lacking its own definition. (*Delgado*, *supra*, 47 Cal.4th at p. 308.) What is more, *Dominguez'*s holding that a criminal jury's rejection of an insured's defense of self-defense is binding in a subsequent insurance dispute defeats the Bilyeus' contention that these ancillary terms must be defined in the policy itself. (*Dominguez*, *supra*, 131 Cal.App.3d at pp. 5-6.)

## II.    Breach of the Covenant of Good Faith and Fair Dealing

To prevail on a claim that an insurance company has breached the implied covenant of good faith and fair dealing, "an insured must show [(1)] that benefits were due under the policy, and [(2)] that the[se] benefits were withheld without proper cause." (*Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1250 (*Benavides*).) The threshold requirement that benefits be due under the policy reflects the fact that breach of the implied covenant is an "auxiliary" and "supplemental" claim that flows from a breach of the insured's "primary right to receive the benefits of his [insurance] contract." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 (*Love*); *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1469; accord, *Waller*, *supra*, 11 Cal.4th at p. 36.)

Because, as we have concluded above, State Farm has no contractual duty to indemnify Cowgill, the Bilyeus' auxiliary bad faith denial claims under the implied covenant of good faith and fair dealing necessarily fail. (See *San Diego Housing Com. v. Industrial Indemnity Co.* (1998) 68 Cal.App.4th 526, 544 ["Where a breach of contract cannot be shown, there is no basis for a finding of breach of the covenant" of good faith and fair dealing]; *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 408 ["without coverage there can be no liability for bad faith on the part of the insurer"]; *Love*, *supra*, 221 Cal.App.3d at p. 1153 [same].) This is true with respect to

---

[4]    The Bilyeus also argue that the terms "willful" and "malicious" are undefined, but these terms are contained in the exclusionary clause that we have no occasion to apply.

claims of bad faith refusal to accept reasonable settlements (*DeWitt v. Monterey Ins. Co.* (2012) 204 Cal.App.4th 233, 250 ["an 'insurer has a duty to accept a reasonable settlement offer only with respect to a *covered* claim'"]), bad faith failure to conduct a proper investigation (*Benavides*, *supra*, 136 Cal.App.4th at p. 1250 ["If the insurer's investigation—adequate or not—results in a *correct* conclusion of no coverage, no tort liability arises for breach of the implied covenant"]), and bad faith breach of the duty to inform its insured (see *Jones v. Grewe* (1987) 189 Cal.App.3d 950, 955).

## III.    Judgment Creditor Claim

Because the Bilyeus can only collect against State Farm if State Farm is liable to Cowgill under the policy, our conclusions that State Farm has no liability to Cowgill disposes of the Bilyeus' judgment creditor claim.

**DISPOSITION**

The judgment is affirmed.  State Farm is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                                                    HOFFSTADT

We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ