Filed 9/30/16  Mares v. Lien Enforcement CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EDWARD D. MARES, | D068426 |
| Plaintiff and appellant, | |
| v. | (Super. Ct. No. 37-2014-00001733-CU-BT-CTL) |
| LIEN ENFORCEMENT, INC. et al., | |
| Defendants and respondents. | |

APPEAL from judgments of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Glassey Smith and Sharon Elizabeth Glassey, Christopher Thomas Smith, Joshua Charles Anaya, for Plaintiff and Appellant.

Carlson & Messer and Jeanne Louise Zimmer, June Grace Felipe, for Defendant and Respondent Lien Enforcement, Inc.

Thomas Lucas and Timothy D. Lucas, A. Kerry Stack, for Defendant and Respondent Atlas Towing Services, Inc., doing business as Advanced Towing.

Plaintiff and appellant Edward D. Mares sued defendants and respondents Lien Enforcement, Inc. (LEI) and Atlas Towing Services, Inc., doing business as Advanced Towing (Advanced) for negligence, defamation, violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.) and declaratory relief after LEI, a debt collector, pursued Mares to collect towing and storage debt for a vehicle that Mares claimed to have previously sold to a third party. On the parties' cross-motions for summary judgment/summary adjudication, the trial court denied Mares's motion for summary adjudication and entered summary judgments in LEI's and Advanced's favor, ruling in part that Department of Motor Vehicles (DMV) registration information reflected that Mares was the registered owner of the vehicle, that LEI and Advanced reasonably relied on this information in directing collection efforts on Mares, and that Mares had not complied with the notice requirements of Vehicle Code[1] section 5900 for the vehicle's sale and transfer so as to absolve him of liability for the "parking, abandoning, or operation" of the vehicle.

Mares appeals from the summary judgments. He contends that (1) the trial court erred by denying summary adjudication of his declaratory relief cause of action because he presented admissible evidence he complied with section 5602, subdivision (a), under which a person entering into a bona fide sale of a vehicle will not be considered an "owner . . . so as to be subject to civil liability for the . . . [vehicle's] abandoning"; (2) the court erred by ruling that Advanced's statutory and general duties of due care, and LEI's

_____

1       Statutory references are to the Vehicle Code unless otherwise indicated.

2

general duty of due care, was limited to determining the identity of the vehicle's registered owner; (3) he demonstrated a triable issue of material fact as to whether Advanced and LEI reasonably investigated the registered owner's liability; (4) the court erred by granting summary judgment on his defamation claim because defendants provided false information to credit reporting agencies, and the Fair Credit Reporting Act (FCRA) did not preempt his claim; and (5) he presented triable issues of material fact as to whether Advanced and LEI committed unlawful, unfair or fraudulent acts.

We conclude the trial court did not err by denying Mares's motion for summary adjudication and by granting summary judgment in Advanced and LEI's favor. In part, we hold Mares did not show as a matter of law he was entitled to a judicial determination of nonliability under section 5602, subdivision (a), because the reference in that section to "civil liability for . . . abandoning" does not refer to responsibility for a lienholder's deficiency claim for towing and storage fees following a lien sale. We also hold summary judgment on Mares's negligence claims was proper based on undisputed evidence that Advanced and LEI determined that Mares was the registered owner of record at the time the vehicle was towed. For these and other reasons set forth below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In or around February 2012, Mares advertised a Jeep (the vehicle) for sale, and in response was contacted by a third party. The vehicle was registered in Mares's name at his grandparents' address. Mares met the buyer on the street, gave him the signed vehicle certificate of ownership (colloquially, the "pink slip"; *Springmeyer v. Ford Motor Co.*

3

(1998) 60 Cal.App.4th 1541, 1569), and accepted $1,000 in cash. As Mares began filling out the notice of release of liability that he had detached from the certificate of ownership, the buyer drove away with the vehicle.

On March 1, 2012, Mares visited the Department of Motor Vehicles (DMV) and filled out a DMV form "Notice of Transfer and Release of Liability" (Reg. 138) (the notice of transfer).[2] He entered "Unknown" for the buyer's name and address. The DMV accepted the form.

In September 2012, in response to a call from the California Highway Patrol (CHP), Advanced towed and impounded the vehicle, which was found abandoned on a highway. Advanced relied on a CHP vehicle report showing that Mares was still the vehicle's registered owner. Advanced retained a lien service company to obtain DMV certified information regarding the vehicle and to act as its agent in performing activities relating to the lien sale. Advanced's lien servicer confirmed that Mares was the vehicle's registered owner and notified Mares of the pending lien sale. Specifically, on October 9, 2012, it sent a "notice of pending lien sale for vehicle valued at $4000 or less" and "notice of stored vehicle/amnesty offer" to Mares's grandfather's address on record, advising Mares that Advanced intended to sell the vehicle at a lien sale, and as the registered owner he was liable for the total towing, storage and lien processing charges

_____

[2] The top of the notice of transfer reads in part: "To ensure your liability is released, please follow instructions below. The form must be completed in full." (Capitalization omitted.) It also contains a provision reading: "WARNING! You must provide accurate, legible information: vehicle vessel description, your name/address, buyer's name/address, and the date of sale or lease return, or the information SHALL NOT be updated or retained!"

4

and fee, less the amount received from the sale. Mares's father received the amnesty offer and told Advanced that the vehicle had been sold and that a notice of transfer had been filed with the DMV. Following its impound, the vehicle was left unclaimed at Advanced's facility, declared abandoned, and disposed of pursuant to storage lien limitations. Advanced sold the vehicle for $200.

Because the lien sale proceeds did not satisfy the towing and storage fees, the deficiency was placed with LEI for collections. Advanced informed LEI that Mares was the vehicle's registered owner of record at the time of the tow, and according to the documents provided by Advanced, LEI also determined that Mares was the registered owner of the vehicle responsible for the debt. At some point, Mares contacted LEI and sent it DMV documents showing a notice of transfer had been filed, but LEI informed him it had verified the debt's legitimacy and would continue to collect it. LEI reported the debt to credit reporting bureaus.

Mares sued LEI and Advanced, and eventually filed a first amended complaint setting out causes of action for negligence, defamation as to LEI, violation of the UCL and declaratory relief. Mares alleged LEI and Advanced failed to use reasonable care in ascertaining whether he (1) was responsible for the claimed debt; (2) had complied with section 5602, subdivision (a) which requires proper endorsement and delivery of the vehicle's title; (3) was absolved of liability by his filing of the notice of transfer; and (4) made a bona fide sale of his vehicle, delivered possession of the vehicle as well as a properly endorsed certificate of ownership to the buyer, and filled out and properly filed the notice of transfer. Mares also alleged that LEI failed to use reasonable care in

5

verifying whether it could legally collect the debt. In his cause of action for defamation, Mares alleged in part that LEI made false statements to credit reporting agencies that Mares had failed to pay a debt, causing those agencies to understand he was a higher credit risk. Many of these allegations were the basis for his UCL cause of action. Mares sought a judicial declaration as to his rights and duties with regard to the vehicle and specifically on his contention that he was not "subject to civil or criminal liability for the parking, abandonment, or operation of the vehicle."

Mares moved for summary adjudication of his negligence and defamation causes of action. In part, he argued he had extinguished any presumptive liability for the debt by complying with sections 5602, subdivision (a) and 5900. Mares pointed out he presented evidence—including via his sworn declaration describing how he had signed and dated the certificate of ownership[3]—that he entered into a bona fide sale, delivered possession of the vehicle, and endorsed and delivered the certificate of ownership to the buyer; that the buyer's name on the title was not required. Mares argued that though Advanced had obtained registration information revealing that Mares had sold the vehicle, it made no independent investigation, ignored information provided by Mares, and continued to attempt to collect the debt, and Advanced had a statutory duty of care under Vehicle

---

[3]  Specifically, Mares averred in paragraph No. 4 of his supporting declaration: "I signed and dated the Jeep vehicle certificate of ownership in two places. First, I signed and dated Line 1a, which is directly below the statement 'I certify under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.' Second, I filled out the odometer reading in the box on the front of the title, wrote the date in the box labeled 'DATE,' and signed in the box labeled 'TRANSFEROR/SELLER SIGNATURE(S).[']"

6

Code section 10652.5 and Civil Code section 3068.2, and it and LEI had general duties of care, to investigate whether Mares was the registered owner and liable for the debt. He asked the court to issue a judicial declaration that he was not liable to LEI or Advanced for the debt and to adjudicate that Advanced and LEI had duties to investigate whether he was liable for the towing and storage fees both before collecting them and after he disputed his liability.

LEI thereafter moved for summary judgment and alternatively summary adjudication of issues. It argued Mares's negligence claim failed because its collection efforts against Mares, the vehicle's registered owner according to DMV records, were reasonable; the FCRA (15 U.S.C. § 1681 et seq.) barred Mares's claim for defamation; and Mares's UCL and declaratory relief claims failed for lack of a viable underlying claim or controversy. Advanced joined in LEI's motion.

The court granted Advanced's motion for joinder, denied Mares's motion for summary adjudication of issues, and granted LEI's motion for summary judgment. In part, it sustained LEI's objections to Mares's declaration describing how he had signed and dated the vehicle's certificate of ownership. As for Mares's negligence cause of action, it ruled Advanced reasonably relied on information that Mares was the registered owner of the vehicle on the date it was towed, gave LEI documentation including a notice of pending lien sale identifying Mares as the registered owner, and informed LEI that Mares was responsible for the debt. It ruled that LEI had no obligation to look beyond the DMV's registration records to ascertain the vehicle's owner and that both Advanced and LEI acted reasonably by relying on the DMV registration information as well as the

7

CHP vehicle report in directing collection efforts on Mares. It rejected Mares's argument that he had complied with section 5602, ruling that even if the section were applicable, Mares had failed to comply with the requirement of section 5900 that he notify the DMV of the purchaser's name and address. With respect to Mares's claim for defamation against LEI, it ruled the information provided by LEI was not false, but even if it was, Mares had no private right of action against it for reporting to credit reporting agencies and that the alleged conduct fell under the FCRA, which preempted the claim. The court ruled that Mares's causes of action under the UCL and for declaratory relief lacked merit given the absence of a violation of law, negligence or defamation liability.

Mares appeals from the ensuing judgments in LEI's and Advanced's favor.

DISCUSSION

I. *Standard of Review*

Summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Summary adjudication is appropriate only if there is no triable issue of material fact as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty. (Code Civ. Proc., § 437c, subd. (f)(1).)

Where, as here, a plaintiff moves for summary adjudication of a cause of action, the court shall grant the motion "only if it completely disposes" of the cause of action. (Code Civ. Proc., § 437c, subd. (f)(1).) The plaintiff bears the initial burden of showing

8

there is no defense to a cause of action by proving each of its elements. (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 564-565; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) "If the plaintiff does not make this showing, ' "it is unnecessary to examine the [defendant's] opposing evidence and the motion must be denied." ' [Citation.] ' "However, if the moving papers establish a prima facie showing that justifies a [ruling] in the [plaintiff's] favor, the burden then shifts to the [defendant] to make a prima facie showing of the existence of a triable material factual issue." ' " (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 900; *Oldcastle*, at p. 564.) To satisfy this burden, the opposing party must present admissible evidence and may not rely upon the allegations or denials of its pleading. (*Aguilar*, 25 Cal.4th at p. 849.)

"A defendant moving for summary judgment or summary adjudication must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] The defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the cause of action. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to set forth 'specific facts' showing that a triable issue of material fact exists." (*Securitas Sec. Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 119-120.)

We review a trial court's decision on summary adjudication or summary judgment de novo, liberally construing the evidence in favor of the party opposing the motion and

9

resolving all doubts concerning the evidence in the opposing parties' favor. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; *Securitas Sec. Services USA, Inc. v. Superior Court*, *supra*, 197 Cal.App.4th at p. 120.) "We must ' "consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party.' " (*See's Candy Shops, Inc. v. Superior Court*, *supra*, 210 Cal.App.4th at p. 900.) Any doubts about the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Ibid.*) This court may affirm an order granting summary judgment without regard to the trial court's stated reasons, as long as it is correct on any ground that the parties had an adequate opportunity to address in the trial court. (*Securitas*, at p. 120; *In re Automobile Antitrust Cases I and II* (2016) 1 Cal.App.5th 127, 145; *Ram's Gate Winery LLC v. Roche* (2015) 235 Cal.App.4th 1071, 1079.)

## II. *Mares's Motion for Summary Adjudication*

A. *Declaratory Relief Cause of Action*

Mares contends that the trial court erred by denying summary adjudication of his cause of action for declaratory relief, in which he sought a judicial declaration concerning his rights and duties with regard to the vehicle and the debt arising from its towing and sale following its abandonment. More specifically, Mares sought a determination that under Civil Code section 3068.2 and Vehicle Code sections 5602, subdivisions (a) and (b), and 5900, he was not "subject to civil or criminal liability for the parking, abandonment, or operation of the vehicle." Mares maintains the trial court ignored his

argument that he had complied with Vehicle Code section 5602, subdivision (a) by selling the vehicle and delivering the title to the new owner, thus exempting him from liability for the parking, abandonment and operation of the vehicle. He further contends the trial court erred when it sustained LEI's objections to paragraph No. 4 of his declaration in which he described how he signed, dated and otherwise filled out the certificate of ownership. Finally, Mares maintains his declaratory relief cause of action, which "seeks to extinguish the debt purportedly owed by [him] to LEI, and halt collection activity," is sufficiently independent and different from his other causes of action such that it should be separately determined.

1. *Mares's Declaratory Relief Cause of Action Is Cognizable on Summary Adjudication*

We begin with LEI and Advanced's contention that Mares's claim for declaratory relief is no different from his other causes of action; that the claim raises the same issues and seeks the same relief as he sought in his negligence and UCL claims. They maintain, citing a Witkin treatise, that the declaratory relief statute "should not be used for the purpose of anticipating and determining an issue that can be determined in the main action." For this proposition, Witkin in turn cites *Hood v. Superior Court* (1995) 33 Cal.App.4th 319.

*Hood* does not preclude Mares from seeking summary adjudication, which may be granted on declaratory relief claims. (See *Vector Resources, Inc. v. Baker* (2015) 237 Cal.App.4th 46, 54 [summary adjudication is appropriate in a declaratory relief action when only legal issues are presented for the court's determination]; *Spencer v. Hibernia*

*Bank* (1960) 186 Cal.App.2d 702, 712.)  In *Hood*, the issue was whether a party may "select issues (other than duty and punitive damages) implicated in one or more causes of action in its complaint or cross-complaint, *amend that pleading to add a cause of action for declaratory relief as to those issues*, and then obtain a summary adjudication of the declaratory relief cause of action . . . ."  (*Hood v. Superior Court*, *supra*, 33 Cal.App.4th at p. 321, italics added.)  The appellate court held that a party cannot extract an element from another cause of action to resolve by summary adjudication because such a "result would fully subvert the restrictions of Code of Civil Procedure section 437c, subdivision (f)(1)."  (*Id.* at p. 321.)  *Hood* deemed the new declaratory relief action to have been "unnecessary and superfluous . . . ."  (*Id.* at p. 324.)  We agree that *Hood* "does not stand for the proposition the trial court cannot grant summary adjudication of a properly pled cause of action for declaratory relief merely because the controversy between the parties spills over into other causes of action.  Rather, the plain lesson of *Hood* is that parties will not be allowed to misuse the declaratory relief cause of action in an attempt to subvert the requirement a summary adjudication must completely dispose of a cause of action."  (*Southern Cal. Edison Co. v. Superior Court* (1994) 37 Cal.App.4th 839, 846; see also *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 82-83.)

2. *Mares Is Not Entitled to a Judicial Declaration that He Is Not Liable for the Deficiency Under Civil Code Section 3068.2 or Vehicle Code Section 5900*

However, we conclude that Mares did not establish that as a matter of law he is entitled to the sought-after judicial declaration under the referenced statutes.  A tow truck

12

operator has a statutory lien for the compensation to which it is legally entitled for the towing and storage of a vehicle that is removed from a public highway. (Civ. Code, § 3068.1, subd. (a)(1); see *County of Los Angeles v. Superior Court* (2015) 242 Cal.App.4th 475, 486.) Civil Code section 3068.2, entitled "Liens and Lien Sales by Tow Truck Operators for Storage Costs," pertains to deficiency claims of a tow truck operator who has such a lien. It provides in part: "A tow truck operator who has a lien on a vehicle pursuant to Section 3068.1 has a deficiency claim against the registered owner of the vehicle if the vehicle is not leased or leased with a driver for an amount equal to the towing and storage charges, not to exceed 120 days of storage, and the lien sale processing fee pursuant to Section 3074, less the amount received from the sale of the vehicle." (Civ. Code, § 3068.2, subd. (a).) Subdivision (d) of Civil Code section 3068.2 provides in part: "A registered owner who has sold or transferred his or her vehicle prior to the vehicle's removal and who was not responsible for creating the circumstances leading to the removal of the vehicle is not liable for any deficiency under this section *if that registered owner executes a notice pursuant to Section 5900 of the Vehicle Code and submits the notice to the Department of Motor Vehicles.* The person identified as the transferee in the notice submitted to the Department of Motor Vehicles shall be liable for the amount of any deficiency only if that person received notice of the transfer and is responsible for the event leading to abandonment of the vehicle or requested the removal." (Italics added.)

Section 5900 sets forth the required notice to the DMV when a vehicle owner "sells or transfers his or her title or interest in, and delivers the possession of, the vehicle

13

to another . . . ."  (§ 5900, subd. (a).)  Whenever that event occurs, "the owner shall, within five calendar days, notify the department of the sale or transfer giving the date thereof, the name and address of the owner and of the transferee, and the description of the vehicle that is required in the appropriate form provided for that purpose by the department."  (§ 5900, subd. (a).)

Mares concedes he did not meet the requirements of Vehicle Code section 5900 because he did not provide the transferee's name and address to the DMV.  His concession disposes of the issue.  Neither Civil Code section 3068.2 nor Vehicle Code section 5900 exclude him from liability for the deficiency on the storage and towing lien held by Advanced and collected by LEI.

3. *Mares Is Not Entitled to A Judicial Declaration That He Is Excluded From Liability for the Deficiency Under Section 5602*

Mares requests a judicial declaration as to his compliance with section 5602, subdivision (a), which addresses an owner's *civil liability* for the negligent or wrongful abandonment of a vehicle by another.  As we explain, though Mares presented admissible evidence he met the requirements of subdivision (a) of that statute,[4] such compliance

---

[4]     We find merit to Mares's argument that the court erred by sustaining objections to and excluding his supporting evidence regarding his endorsement of the certificate of title, though our conclusion does not alter the outcome of this opinion.  LEI purported to object to paragraph No. 4 of Mares's declaration in its opposing separate statement, but did not in its separately-filed evidentiary objections in opposition to Mares's motion.  LEI's purported objection to the paragraph was deficient.  (*Hodiat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 7-8.)  Advanced objected to the declaration on grounds it lacked foundation, was based on hearsay, assumed facts not in evidence, and violated the secondary evidence rule.  It also objected to the paragraph

14

does not resolve his liability for the deficiency stemming from the towing and storage charges, or the question of whether it was reasonable for Advanced and LEI to direct their collection efforts for the deficiency at him.

Section 5602 provides two alternative ways for a private seller of a vehicle to avoid being deemed the "owner of the vehicle so as to be subject to civil liability or criminal liability for the parking, abandoning, or operation of the vehicle thereafter by another . . . ." If the seller has made a bona fide sale of the vehicle and has delivered possession of it to the buyer, the seller is released from such liability thereafter if he or

under Code of Civil Procedure section 437c, subdivision (e), which provides in part that summary adjudication "may be denied in the discretion of the court if the only proof of a material fact offered in support of the summary [adjudication] is an affidavit or declaration made by an individual who was the sole witness to that fact . . . ." Advanced maintains the court did not abuse its discretion in sustaining these objections, characterizing Mares's declaration as "self-serving" and uncorroborated. LEI makes a similar cursory claim. But paragraph No. 4 of Mares's declaration was not the sole evidence on the issue; the record also contains Mares's deposition testimony attesting that he filled out the title. Furthermore, the secondary evidence rule (Evid. Code, § 1521, subds. (a), (d)) was not a bar to admission of Mares's testimony concerning how he filled out the form where the document was missing and there was no evidence of fraudulent intent. (See Evid. Code, § 1523, subd. (b); *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1069-1070 ["A corollary of the rule that the contents of lost documents may be proved by secondary evidence is that the law does not require the contents of such documents be proved verbatim" and the "lost document cases illustrate a few of the many types of secondary evidence that courts have admitted to prove the contents of a missing instrument," including oral testimony that is "often admitted" for this purpose].) We agree Mares's description was within his personal knowledge (Evid. Code, § 702, subd. (a)), it was not hearsay in that it was not concerning an out-of-court statement (Evid. Code, § 1200), and it did not rely on any other evidence. Thus Advanced's foundation and hearsay objections were misplaced. Even construing Mares's evidence in support of his motion strictly as we must (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1386-1387, citing *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460), we conclude the court did not have discretion to exclude paragraph No. 4 of Mares's declaration. As for evidence of Mares's delivery of the certificate to the buyer, the court did not exclude that portion of Mares's declaration, which also was covered in his deposition.

she also *either* properly endorses and delivers the certificate of ownership (§ 5602, subd. (a)), or delivers or mails to the DMV any of the documents specified in the statute, which include the notice as provided in section 5900 (§ 5602, subd. (b);[5] *Hidalgo v. Anderson* (1978) 84 Cal.App.3d 378, 381-383.) Mares concedes he did not meet the requirements of section 5602, subdivision (b).

The import of section 5602 and the authorities discussing it (including those relied upon by Mares), is that when a seller provides proof he or she complied with either alternative in the statute, the seller will no longer be considered an "owner" so as to be vicariously liable for death, personal injuries or property damage caused by another person's negligent or wrongful operation, parking or abandonment of the vehicle under section 17150, otherwise known as the "owner liability statute." (§ 5602; see *Lerner v. Superior Court* (1977) 70 Cal.App.3d 656, 658-660 [evidence that the defendant entered into a bona fide sale and delivery of the vehicle, and also endorsed and delivered the

---

5        Section 5602 provides in full:  "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession of the vehicle to a purchaser is not, by reason of any of the provisions of this code, the owner of the vehicle so as to be subject to civil liability or criminal liability for the parking, abandoning, or operation of the vehicle thereafter by another when the selling or transferring owner, in addition to that delivery and that bona fide sale or transfer, has fulfilled either of the following requirements:  [¶] (a)  He or she has made proper endorsement and delivery of the certificate of ownership as provided in this code.  [¶]  (b)  He or she has delivered to the department or has placed in the United States mail, addressed to the department, either of the following documents: [¶]  (1)  The notice as provided in subdivision (b) of Section 4456 or Section 5900 or 5901.  [¶]  (2)  The appropriate documents and fees for registration of the vehicle to the new owner pursuant to the sale or transfer."  In 1987, the Legislature added parking and abandoning to section 5602, releasing a transferring owner of liability for those events in addition to operation.  (Stats. 1987, ch. 1097, § 1; see Historical and Statutory Notes, 65D West's Ann. Veh. Code (2015 ed.) foll. § 5602, pp. 14-15.)  Mares does not cite any legislative history for this amendment.

16

certificate of ownership, relieved her of exposure to liability for personal injuries and wrongful death arising from an accident involving the vehicle's buyer]; *Savnik v. Hall* (1999) 74 Cal.App.4th 733, 741; *Brennan v. Gordon Ball, Inc.* (1985) 163 Cal.App.3d 832, 835-836 [reversing judgment for defendant transferor in wrongful death where defendant did not comply with requirement of delivery of ownership certificate; "[f]or the purpose of imposing liability under section 17150, the transferor of an automobile continues to be an owner of the vehicle unless and until he complies with those conditions prescribed by other provisions of the Vehicle Code to relieve himself of liability"]; *Brown v. Fix* (1978) 86 Cal.App.3d 809, 811-813 [a gift is a bona fide transfer for purposes of applying section 5602 so as to protect the transferor from liability for damages stemming from an accident caused by another driver]; *Hidalgo v. Anderson*, *supra*, 84 Cal.App.3d at pp. 380-383 [appellants avoided liability for wrongful death and personal injuries resulting from automobile accident by complying with subdivision (a) of section 5602]; *Durbin v. Fletcher* (1985) 165 Cal.App.3d 334, 341-342; *Enis v. Specialty Auto Sales* (1978) 83 Cal.App.3d 928, 935-941 [reversing a judgment in favor of defendants on plaintiff's action for damages and personal injuries where trial court improperly instructed the jury on the burden of proof; appellate court explained "it is settled that, for the purpose of imposing liability under section 17150, the transferor of an automobile continues to be an owner of the automobile unless he complies with the prerequisites to avoidance of liability as prescribed by section 5602"]; *Laureano v. Christensen* (1971) 18 Cal.App.3d 515, 521 [reversing summary judgment in favor of defendant in personal injury action; defendant who signed but failed to date vehicle

17

ownership certificate did not make a "proper endorsement" under section 5602 and defendant could not escape liability under section 17150]; *Nuss v. Pacht* (1971) 22 Cal.App.3d 553 [upholding judgment in personal injury action against seller of vehicle who had furnished the driver/buyer with an endorsed but undated certificate of ownership]; *Arnold v. Bernay* (1950) 95 Cal.App.2d 614 [action for personal injuries by plaintiff; appellant seller of vehicle was held to have divested himself of ownership and was protected from liability for the injuries under predecessor statutes (former sections 177 and 178), requiring reversal of the judgment against him]; *Woods v. Eastridge* (1950) 99 Cal.App.2d 625 [affirming judgment after trial court found defendant was not an owner liable for personal injuries arising out of an auto collision in which third party negligently operated the car]; *Piacun v. Hexem* (1936) 18 Cal.App.2d 145, 149 [reversing judgment against defendant in an action for personal injury damages stemming from plaintiff being struck by a car driven by a person other than defendant; defendant absolved himself as an owner for any liability for imputed negligence—the "statutory liability for the tortious act of another"—by complying with predecessor statutes to section 5602].)  The " 'statutory liability of the owner [under the owner liability statute] is predicated on the theory of imputation of wrongdoing and it entirely independent from any liability based on his or her own negligence.' "  (*Springmeyer v. Ford Motor Co.*, *supra*, 60 Cal.App.4th at p. 1571.)  To escape such liability, strict compliance with section 5602 is required as a policy matter for the protection of innocent parties who are injured by negligently operated vehicles.  (*Savnik v. Hall*, at pp. 741-742; *Laureano v.*

18

*Christensen*, at pp. 520-521, 522; *Brennan v. Gordon Ball, Inc.*, at p. 839; *Springmeyer v. Ford Motor Co.*, at pp. 1570-1571.)

Compliance with section 5602 is not dispositive when the claim is not one of such vicarious liability. In *Springmeyer v. Ford Motor Co.*, for example, the Court of Appeal explained that a former vehicle owner's (Avis) compliance with section 5602 was not implicated by a claim in a product defect case that Avis failed to have a vehicle repaired in response to the manufacturer's recall notice. The question raised by the evidence was who owned the vehicle when the recall notice was sent for purposes of a duty to ensure repair, not whether ownership was effectively transferred for purposes of the owner liability law. (*Springmeyer v. Ford Motor Co.*, *supra*, 60 Cal.App.4th at pp. 1571, 1572 ["Failure to comply with the owner liability statute in connection with the sale would have left Avis vicariously liable for any negligence on the part of Harvester, but, again, vicarious liability is not at issue"].)

None of the aforementioned cases, and none of the cases relied upon by Mares involving section 5602, present issues as to the responsibility for deficiency claims by tow truck operators following a lien sale after a vehicle is abandoned. The authorities cited by Mares provide no basis to conclude the Legislature's reference in section 5602 to "civil liability" refers to such responsibility. Mares engages in no statutory construction, and he cites no evidence of legislative intent on the question. A judicial declaration as to Mares's compliance with section 5602 has no bearing on his responsibility for the lien deficiency at issue; it does not address the subject matter of this dispute. (Accord, *Springmeyer v. Ford Motor Co.*, *supra*, 60 Cal.App.4th at pp. 1570-1572.)

19

Rather, as we have summarized above, the Legislature specifically addressed liability for this very type of claim in Civil Code section 3068.2, and exclusion from liability under that section requires compliance with Vehicle Code section 5900 *only*. Because Mares admits he cannot establish he submitted a notice to the DMV that identified the name and address of the buyer pursuant to Vehicle Code section 5900, and further admits the DMV records showed he was the vehicle's registered owner, he was as a matter of law liable for the debt. On this basis, summary adjudication of his claim for declaratory relief was properly denied.

Even if we were to assume arguendo that Vehicle Code section 5602's reference to civil liability encompasses the same subject as Civil Code section 3068.2, that is, liability for towing and storage charge deficiencies stemming from the abandonment of a vehicle, we would reach the same conclusion. The two statutes conflict as to the requirements for absolving a registered owner of such liability. Thus, we would apply the principle that where two statutes relate to the same subject but irreconcilably conflict, the later and more specific statute will prevail over the earlier, more general one. (See *In re Greg F.* (2012) 55 Cal.4th 393, 407; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1208.) Civil Code section 3068.2, enacted in 1994, is the more recent and specific enactment on the subject than Vehicle Code section 5602, and that provision controls.

20

4. *Sections 22523 and 22524*

Both parties point to sections 22523 and 22524, and advance arguments as to why those provisions should be interpreted to either impose responsibility on Mares for costs related to the vehicle's abandonment, or relieve him of such responsibility. But these provisions are inapplicable, as a matter of law, to the instant case.

Section 22523 makes it unlawful to abandon a vehicle on a highway, as well as on public or private property without the express or implied consent of the owner or person in lawful possession or control of the vehicle. (§ 22523, subds. (a), (b).) The section makes the offense an infraction punishable by a fine and, absent proof the vehicle was stolen before abandonment, payment of the costs of removal and disposition of the vehicle. (§ 22523, subds. (c), (d).)

Vehicle Code section 22523, subdivision (f)(1) addresses who is guilty of an infraction when the abandoned vehicle is not redeemed after impound, and sets forth punishment. It provides: "If a vehicle is abandoned in violation of subdivision (b) and is not redeemed after impound, the last registered owner is guilty of an infraction. *In addition to any other penalty*, the registered owner shall be liable for any deficiency remaining after disposal of the vehicle under Section 3071 or 3072 of the Civil Code or Section 22851.10 of this code." (Italics added.) Under subdivision (f)(2) of Vehicle Code section 22523, the owner is relieved of liability "*under this subdivision*" by "[t]he filing of a report of sale or transfer of the vehicle pursuant to Section 5602, the filing of a vehicle theft report with a law enforcement agency, or the filing of a form or notice with

21

the department pursuant to subdivision (b) of Section 4456 or Section 5900 or 5901 . . . ." (Italics added.)

When a vehicle is abandoned within the meaning of section 22523, the Legislature has created a "prima facie presumption that the last registered owner of record is responsible for the abandonment and is thereby liable for the cost of removal and disposition of the vehicle." (§ 22524, subd. (a).) However, "[a]n owner who has made a bona fide sale or transfer of a vehicle and has delivered possession of the vehicle to a purchaser" may overcome that presumption "by demonstrating that he or she has complied with Section 5900 or providing other proof satisfactory to the court." (§ 22524, subd. (b).)

We read the release of "liability under this subdivision" language in section 22523, subdivision (f)(2), along with section 22524, to mean that a registered owner *will be relieved of liability for an infraction and any associated penalties* by the filing of the enumerated documents, and that the rebuttable presumption stated in section 22524 will apply in infraction proceedings. But there is no evidence Mares was charged with or underwent any sort of proceeding on an infraction (see *People v. Simpson* (2014) 223 Cal.App.4th Supp. 6, 9 [describing procedures for infractions]), or that a court imposed any penalty for such an offense, which could include the deficiency following a lien sale.

We decline to divorce the rebuttable presumption set out in section 22524 from the infraction set out in section 22523. But if we were to do so, Mares has conceded below that he did not comply with section 5900, and thus cannot rebut any presumption of responsibility. Mares claims that his endorsement and delivery of the certificate of title

22

and vehicle to the buyer under section 5602, subdivision (a) constitutes a "transfer of the vehicle" within the meaning of section 22523, and that such a "transfer" suffices to release him of liability for the vehicle's abandonment. But we cannot agree with his parsing of the statute. As we interpret section 22523, subdivision (f)(2), it requires the "filing of a report of sale or transfer" within the meaning of section 5900 (§§ 5602, subd. (b), 5900, subd. (a) [referring to giving notice to the department "of the sale or transfer"]), not merely evidence of delivery of a certificate of title to an unknown buyer, to relieve a registered owner of liability for an infraction.

B. *Advanced's Statutory Duty of Care*

Mares contends the trial court erred by denying summary adjudication on the issue of Advanced's statutory duty of care and limiting Advanced's duty to merely determining the identity of the vehicle's registered owner. He maintains that Advanced as a tow truck operator must comply with a number of statutory duties under Vehicle Code sections 5602 and 10652.5, and Civil Code sections 3068.2, 3071, and 3072, which he asserts require an investigation more thorough than a simple check of the registered owner's identity, namely, to check the DMV registration and other DMV filings to ascertain the identities of the "registered owner, the legal owner and any other interested parties." Mares correctly points out that summary adjudication may be proper as to one or more issues of duty. (Code Civ. Proc., § 437c, subd. (f)(1).)

As a threshold matter, these claims are procedurally barred by Mares's failure to allege such specific statutory duties under these statutes in his first amended complaint. (Accord, *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1266; see *Cerna v. City of*

23

*Oakland* (2008) 161 Cal.App.4th 1340, 1349 [plaintiffs must specifically allege violation of a mandatory duty under a statute].)  A motion for summary adjudication may not be granted on issues not raised by the pleadings; it is the allegations in the complaint to which the motion must respond.  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258; *Cerna*, at pp. 1349-1350 [pleadings limit the issues on a motion for summary judgment].)

Were there no procedural bar, Mares has not established he is entitled as a matter of law to adjudication of any such statutory duty.  As stated, under Civil Code section 3068.1, subdivision (a), a tow operator has a statutory lien for certain towing and storage charges incurred in impounding a vehicle.  (Civ. Code, § 3068.1, subd. (a)(1); see *County of Los Angeles v. Superior Court*, *supra*, 242 Cal.App.4th at p. 486.)  When the vehicle has a value not exceeding $4,000, the "lien shall be satisfied pursuant to Section 3072." (Civ. Code, § 3068.1, subd. (b).)  Before the vehicle may be sold to satisfy this lien, the towing company must provide notice to its registered and legal owner by certified mail, and it must obtain names and addresses from the DMV to perform its statutory duty to provide this notice to owners of impounded or stored vehicles.  (*County of Los Angeles*, at p. 486, citing Civ. Code, §§ 3071, subd. (b)(2), 3072, subd. (b); Veh. Code, § 22851.8, subd. (b).)[6]  The disclosure of addresses to tow companies *by the DMV* "facilitates the

_____

[6]     Civil Code Sections 3071 and 3072 respectively relate to a lienholder's application for authorization to conduct a lien sale, and the procedures for such a sale.  The application "shall" include certain information, including "[t]he names and addresses of the registered and legal owners of the vehicle, if ascertainable from the registration certificates within the vehicle, and the name and address of any person whom the

24

statutory requirement of notice to registered and legal owners of vehicle." (*County of Los Angeles*, at p. 486.) Liens for fees or charges for parking and storage of a vehicle "shall be subject to Section 10652.5 of the Vehicle Code" (Civ. Code, §§ 3071, subd. (*l*), 3072, subd. (j)), which limits a claim for storage charges to 15 days unless certain notice requirements are met. (Veh. Code, § 10652.5, subd. (a).[7]) Civil Code section 3068.2 gives a tow truck operator with a statutory lien "a deficiency claim *against the registered owner* of the vehicle . . . ." (Civ. Code, § 3068.2, subd. (a), italics added.) As we have discussed above, a registered owner "is not liable for any deficiency under this section" if the owner complies with Vehicle Code section 5900 (Civ. Code, § 3068.2, subd. (d)), a condition Mares agrees he did not meet.

---

lienholder knows, or reasonably should know, claims an interest in the vehicle." (Civ. Code, § 3071, subd. (a)(2).) A lienholder who seeks to sell a vehicle valued $4,000 or less "shall apply to the department for the names and addresses of the registered and legal owners of record" and send certain information, including a notice of pending lien sale, to those persons and to "any other person known to have an interest in the vehicle." (Civ. Code, § 3072, subds. (a), (b).) Noncompliance with these requirements voids the lien sale. (Civ. Code, §§ 3071, subd. (*l*), 3072, subd. (j).)

[7] Vehicle Code section 10652.5, subdivision (a) provides: "Whenever the name and address of the legal owner of a motor vehicle is known, or may be ascertained from the registration records in the vehicle or from the records of the Department of Motor Vehicles, no fee or service charge may be imposed upon the legal owner for the parking and storage of the motor vehicle except as follows: (1) the first 15 days of possession and (2) following that 15-day period, the period commencing three days after written notice is sent by the person in possession to the legal owner by certified mail, return receipt requested, and continuing for a period not to exceed any applicable time limit set forth in Section 3068 or 3068.1 of the Civil Code." Here, there is no dispute Advanced via its lien servicer obtained DMV records to ascertain the registered owner. We agree with Advanced that Vehicle Code section 10652.5 does not expand the scope of any investigation by a towing company relating to the limits for storage fees and charges beyond looking into the registration records within the vehicle and DMV records.

These statutes do not create a special standard of conduct or any affirmative duty of care upon Advanced to conduct any sort of investigation *with respect to collecting on its deficiency claim* beyond ascertaining the registered owner of the vehicle who is responsible for the deficiency.  (Civ. Code, § 3068.2, subd. (a).)  These statutes impose notice obligations on lienholders for purposes of conducting the lien sale or limiting the fee or service charge amounts, and Mares makes no claim that Advanced failed to provide adequate notice to him in connection with its lien sale efforts or the amount of charges.  These statutes do not impose obligations relating to later collection efforts on the deficiency.  We do not find in their language any legislative intent to create, nor has Mares cited authority establishing or suggesting, a statutory duty of care as Mares urges.  We reach the same conclusion with respect to Vehicle Code section 5602, which as we have explained does not pertain to a registered owner's liability for a deficiency claim for towing and storage charges following a lien sale.

III.  *Respondents' Motion for Summary Judgment*

A.  *Advanced's and LEI's Duty of Care*

Based on the premise that he complied with section 5602, subdivision (a) so as to relieve himself from liability from the towing and storage debt, Mares contends he presented evidence demonstrating a triable issue of material fact as to whether Advanced conducted a reasonable investigation into whether he was liable for the debt before its collection efforts.  He concedes that the evidence shows Advanced obtained DMV registration information from its lien servicer, which showed Mares had filed a release of liability form and had sold the vehicle for $1,000.  He argues, "Rather than continue to

26

reasonably inquire about the sale of the vehicle, Advanced ignored the fact that the DMV had recorded a sale and attempted to collect the debt from Mr. Mares." Mares further contends that there are triable issues as to whether both Advanced and LEI conducted a reasonable investigation after he and his father called Advanced to challenge the debt and inform them he had sold the vehicle.

A negligence action "requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff." (*Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1532; see *United States Liability Ins. Co. v. Haidinger–Hayes, Inc.* (1970) 1 Cal.3d 586, 594.) It is settled that the existence and scope of a legal duty of due care are legal questions for the court. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477; *Vasilenko v. Grace Family Church* (2016) 248 Cal.App.4th 146, 152, review granted September 21, 2016, S235412.) As the moving parties on summary judgment, LEI and Advanced had the burden of showing that Mares's negligence causes of action lacked merit because one or more elements could not be established or there was a complete defense to those causes of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Vasilenko*, at p. 153.) In support of its motion, LEI argued that it never breached any duty of reasonable care it might have owed to Mares because its attempts to collect the debt were reasonable, and all of the documents and information provided to it identified Mares as the registered owner.

Whether Mares can maintain a negligence action against Advanced and LEI for failing to conduct a reasonable investigation, or engaging in illegal collection efforts, is

27

resolved by our conclusion that as a matter of law, Advanced as the lienholder possessed its deficiency claim against Mares, the registered owner of the vehicle of record. (Civ. Code, § 3068.2.) The evidence is undisputed that Advanced obtained DMV registration information showing Mares to be the registered owner, and notified LEI of that fact with documentation, leading LEI to likewise confirm his status as the person responsible for the deficiency. While evidence that Mares endorsed and delivered the certificate of title to a buyer would relieve Mares from liability from a personal injury or property damage action brought by a third party injured by the vehicle's abandonment, it did not relieve Mares from responsibility for the deficiency following the lien sale. That evidence does not create a triable issue of material fact on the question of Advanced and LEI's duty, or breach of duty, to pursue or collect the debt against the person responsible for it. Likewise, Mares's filing of the notice of transfer does not raise a triable issue for a jury because the notice did not identify any buyer and therefore did not meet the requirements of section 5900, which would absolve Mares of liability for the deficiency due to the vehicle's sale or transfer. (Civ. Code, § 3068.2, subd. (d).) We conclude the trial court properly granted summary judgment in Advanced and LEI's favor.

B. *Mares's Cause of Action for Defamation Against LEI*

Mares contends the trial court erred by granting summary judgment on his cause of action for defamation against LEI, in which he alleged in part that LEI made false statements to credit reporting agencies that Mares had failed to pay a debt owed to Advanced and/or LEI. Mares points to evidence that LEI had a policy or procedure to collect all towing and storage-related debts from the party listed on the DMV registration

28

information as the owner of record at the time of the vehicle's impound. He argues in view of his lack of liability for the towing and storage bill as well as evidence that LEI possessed information that he was not liable for the debt but conducted no investigation, there is a triable issue of material fact as to whether LEI furnished false information to a consumer reporting agency with malice or willful intent to injure a consumer such that his claim is not exempt from the FCRA.

We need not reach the FCRA arguments. To state a defamation claim, a plaintiff must present evidence of a statement of fact that is provably false. (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809 ["There can be no recovery for defamation without a falsehood"].) Again, the premise of Mares's argument is that he presented evidence he was not responsible for the towing and storage debt or deficiency, namely, that he had properly endorsed and delivered the certificate of title to the buyer, and that the DMV records showed that a sale had occurred. But as we have explained, Mares was as a matter of law liable for the deficiency under Civil Code section 3068.2 notwithstanding that evidence, because DMV records continued to show Mares was the vehicle's registered owner, and Mares presented no evidence that he complied with the filing under section 5900 that would relieve him from liability from that debt. In short, Mares's cited evidence does not raise a triable issue of material fact for a jury on the question of whether Advanced or LEI provided false information to any credit agency by accurately identifying Mares as the debtor on its deficiency claim. Summary judgment was properly granted on that claim.

29

C.  *Mares's UCL Cause of Action*

"The UCL does not proscribe specific activities, but in relevant part broadly prohibits 'any unlawful, unfair or fraudulent business act or practice.'  [Citation.] ' " 'Because [Business and Professions Code] section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.  "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' " '  [Citations.]  [¶]  A private party has standing to bring a UCL action only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' "  (*Aleksick v. 7–Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1184.)

Mares's claim for violation of the UCL is predicated on his negligence and defamation claims.  Having concluded LEI and Advanced are entitled to summary judgment on those causes of action, we affirm the ruling disposing of the derivative UCL claim as well.  (*Javorsky v. Western Athletic Clubs, Inc.* (2015) 242 Cal.App.4th 1386, 1408, citing *Pizarro v. Lamb's Players Theatre* (2006) 135 Cal.App.4th 1171, 1177.)

DISPOSITION

The judgments are affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.